O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA E. L., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-1783- KES <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**PROCEDURAL BACKGROUND**

Plaintiff Cassandra E. L. ("Plaintiff") applied for supplemental security income ("SSI") disability benefits in 2015, alleging a disability onset date of December 15, 2012.[1] Administrative Record ("AR") 35, 353. On July 16, 2018, an Administrative Law Judge ("ALJ") conducted a hearing which Plaintiff and her husband attended without a legal representative. AR 166-206. On September 13, 2018, the ALJ issued an unfavorable decision. AR 35-43. The ALJ found that

---

[1] Elsewhere, Plaintiff claimed that she became unable to work on February 10, 2013, and also December 15, 2014. See AR 324, 358.

Plaintiff suffered from medically determinable severe impairments of "gastroparesis, left shoulder AC joint arthrosis, left shoulder bicipital tendonosis, status post right forearm fracture, cervical spondylosis and radiculopathy status post cervical fusion, and status post fifth metacarpal fracture." AR 37. Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light" work with some limitations on postural activities, only occasional exposure to extreme cold and vibration, and an accommodation "to take four five-minute bathroom breaks a day in excess of normal breaks." AR 38. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a ski instructor, but she could work as an usher, counter clerk, or rental clerk. AR 41-43, 183. The ALJ concluded that Plaintiff was not disabled. AR 43.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ gave clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. (Dkt. 18, Joint Stipulation ["JS"] at 4.)

## III.
## OVERVIEW OF THE MEDICAL EVIDENCE

The following is a chronological summary of the relevant medical evidence:

- 4/6/10: A "Final Progress Note" from Loma Linda states that Plaintiff complained of "nausea & vomiting x 6 wks." AR 737. Tests revealed a "normal pancreas" and her abdominal "pain improved." Id.
- 5/17/10: A Loma Linda gastroenterology appointment record notes "gastroparesis" and "nausea & vomiting" as diagnoses. A handwritten note says, "paralyzing of the sponias nerve damage." AR 733.
- 8/15/11: Plaintiff went to Loma Linda complaining of abdominal pain, nausea, and vomiting. AR 734. After an endoscopic examination, she was

2

1 diagnosed with "probable gastroparesis." AR 735-36.

2 • 12/5/12: Plaintiff went to Bear Valley Community Hospital ER
3 complaining of left shoulder pain, constant over the last week. AR 451, 454. She
4 had a normal ECG test. AR 452. She denied abdominal pain and had a normal
5 range of motion ("ROM") with no tenderness. AR 454-55. She was diagnosed as
6 suffering a muscle spasm affecting her left shoulder. AR 455. The ER staff
7 assessed Plaintiff as "very rude and hostile" and noted that she left prior to
8 receiving care instructions. Id.

9 • 12/15/12: Plaintiff's alleged disability onset date. AR 353.

10 • 11/18/14: Plaintiff went to Loma Linda for a "pre-op visit" complaining of
11 "worsening posterior neck pain for approximately 11 months after lifting a box out
12 of a car." AR 477. She described numbness and tingling affecting her left fingers.
13 Id. She denied dizziness and gait problems. AR 479. She had a normal gait and
14 balance. AR 480. Loma Linda performed a cervical discectomy and fusion to
15 address "moderate to severe cervical stenosis." AR 481, 486. She reported
16 "complete resolution" of the hand numbness and neck pain and was discharged at
17 "5/5 strength." AR 486.

18 • 12/2/15: Plaintiff went to the Bear Valley ER complaining that she injured
19 her right arm when she "fell on ice." AR 523. X-rays revealed a fifth metacarpal
20 fracture. AR 524. At the time, she denied nausea and vomiting. AR 526. She
21 also denied hand numbness and problems with walking. Id. She had no shoulder
22 tenderness. AR 527.

23 • 12/3/15: The next day, Plaintiff returned to the ER complaining of
24 abdominal pain. AR 510, 519. She told the doctors that her nausea and vomiting
25 felt like past pancreatitis. AR 519. She was diagnosed with pancreatitis and a
26 urinary tract infection ("UTI"). AR 518.

27 • Jan. 2016: Plaintiff went back to the Bear Valley ER complaining of left
28 shoulder pain and right wrist pain after falling two weeks earlier. AR 501-02.

Imaging tests revealed a "normal left shoulder" and a "healing 5th metacarpal fracture" of her right wrist, referring to the fracture identified in December 2015. AR 502, 504. At the time, she denied nausea and vomiting. AR 508.

- 1/24/16: Plaintiff underwent an orthopedic evaluation by consultative examiner Dr. Joseph. AR 464. She told Dr. Joseph that she had suffered from gastroparesis since tubal ligation surgery in 2008, but it was only diagnosed in 2010. AR 464-65. She explained that she had a cast on her right wrist because she broke it slipping on ice. AR 465. She reported that she had experienced left shoulder pain since February 2013, but she acknowledged that testing had not revealed any pathology. AR 465. At the time, her only pain medication was ibuprofen. Id. She was wearing a bone stimulator brace on her neck. AR 467. Dr. Joseph conducted negative straight leg raising tests. AR 467. He observed a limited ROM of Plaintiff's shoulders and spine. AR 468. She stated that she could not look to the left or down. AR 465. She claimed that she was unable to squat or stand on her heels. AR 468.

- 2/23/17: Plaintiff called an ambulance complaining of abdominal pain and pancreatitis. AR 729. At the St. Mary's ER, she complained of an allergic reaction (face and throat swelling) after eating peanut butter. AR 695. She reported episodes of vomiting but no dizziness. AR 711. The ER staff noted "no obvious swelling visible at this time." AR 696. They also noted that Plaintiff refused to answer questions during assessment and stated, "I just want my prescription so that I can go"; then she "got up and left." AR 696-97, 706. "Called in lobby x 3 for DC [discharge] instructions – no answer." AR 696.

- 4/24/17: Plaintiff returned to the St. Mary's ER complaining of right hip and rib pain after she slipped on dog urine at home. AR 684. After x-rays revealed no fractures, she was diagnosed with a "contusion of chest wall." AR 650, 687-88. At the time, her neck and back were assessed as normal. AR 685. She was prescribed hydrocodone. AR 551.

- 10/3/17: Plaintiff went to the St. Mary's ER complaining of abnormal stools. AR 597-98. While one note says that she denied pain and vomiting, another says that she reported that her gastroparesis caused her "to vomit every day." AR 597, 600. An abdominal scan revealed a "normal" pancreas, stomach, and other organs. AR 630-31. Lab tests showed she was suffering from another UTI. AR 634.

At this same ER visit, Plaintiff also complained of right-hand pain from another fall. AR 597. She told the ER that "2 days ago, [she] slipped and fell on a hanger, hitting her hand," but she denied any "numbness or tingling." AR 624. Hand x-rays showed no new fracture. AR 629. She refused an offered splint for her hand. AR 634.

- 10/25/17: A few weeks later, Plaintiff was seen at St. Mary's ER complaining of abdominal pain, nausea, and vomiting over the last 5 days. AR 533-34, 544, 578. She did not complain of dizziness, and her extremities had a normal ROM. AR 579-80. She was diagnosed as still suffering from a UTI with elevated lipase. AR 533, 548.

- 6/28/18: Plaintiff went to physical therapy for left-shoulder pain. AR 720. She told her therapist that she had been diagnosed with "frozen shoulder" in 2016. Id. She was referred to therapy because in April 2018, she "sustained a fall and re-injured her left shoulder." Id. Although x-rays revealed no fracture or dislocation, her doctors suspected "potential for rotator cuff impingement." Id. She had reduced ROM in her left shoulder. AR 721. Further imaging in July 2018 revealed a rotator cuff tear, and Plaintiff was referred for surgery. AR 739.

- 8/4/18: Plaintiff answered questions about her medical history. She denied trouble concentrating on things like reading or watching TV. AR 62; compare AR 190-91 (In July 2018, Plaintiff testified, "I don't even watch TV" and "I can't focus."). Plaintiff said she spent ½ hour per day doing activities "such as walking, gardening, swimming." AR 65; compare AR 190 (Plaintiff spent most of

each day in bed), AR 193 (Plaintiff walked into walls because of bad balance), and AR 383 (Plaintiff got dizzy if she walked "a little bit" and could not walk one block). Plaintiff said that she did not often have trouble sleeping. AR 65; compare AR 193 (Plaintiff testified, "I don't even sleep most of the time. … I can't even sleep.")

- 9/13/18: The ALJ issued his decision.[2] AR 43.
- 12/4/18: Plaintiff went to Ultimate Sports and Orthopaedics ("US&O") for additional care for her left shoulder. She told US&O that she had been experiencing left shoulder pain for about three months after falling at home, apparently referencing her fall in June 2018. AR 99. Plaintiff reported pain with overhead reaching but denied tingling or numbness. Id. She denied any prior shoulder injury. Id.
- 12/5/18: Plaintiff attended an appointment for "pre-op clearance." AR 71. She had a normal ROM in her extremities and lower back and reported "No Med Probs." Id. Clinic staff, however, wrote, "Pt demands that I provide pre-op clearance NOW! No PE [physical examination] allowed/permitted by pt. Pt was unwilling to discuss planned sx [surgery]. Pt accosted me verbally …. Pt snatched all clinic visit documents from me and stormed out of clinic, stomping feet, screaming …." Id.
- 12/13/18: Plaintiff underwent surgery to repair her torn left rotator cuff. AR 123.
- 3/12/19: At a follow-up appointment, Plaintiff reported no change in her symptoms and pain at 8/10, but she was able to achieve a full ROM with pain. AR 51-52.

---

[2] The parties do not discuss whether the Appeals Council considered records submitted after the ALJ's decision. See AR 2 (Appeals Council discussion of additional medical evidence). The Court summarizes these records for completeness.

• 4/19/19: At the next appointment, Plaintiff reported that her pain had worsened to 10/10, but she still had an "unremarkable but painful" shoulder ROM. AR 53-54. Medical staff observed that her strength and muscle tone were "normal." AR 54.

## IV.

## DISCUSSION

### A. ALJ's Evaluation of Subjective Symptom Testimony.

It is the ALJ's role to evaluate the claimant's testimony regarding subjective pain or symptoms. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Id. at 1112. An ALJ's assessment of symptom severity is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989).

If an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process. First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of SSA, 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted). Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only upon making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014).

In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements …; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."

1  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304 at *4.  ALJs may also
2  consider inconsistency in the claimant's statements.  <u>Ghanim</u>, 763 F.3d at 1163;
3  SSR 16-3p, 2017 WL 5180304 at *8 ("[The Commissioner] will compare
4  statements an individual makes in connection with the individual's claim for
5  disability benefits with any existing statements the individual made under other
6  circumstances.").

7       If the ALJ's findings are supported by substantial evidence in the record,
8  courts may not engage in second-guessing.  <u>Thomas v. Barnhart</u>, 278 F.3d 947,
9  959 (9th Cir. 2002).

10   **B. <u>Summary of Plaintiff's Testimony.</u>**

11      Plaintiff initially applied for SSI alleging that she suffered from
12 gastroparesis, constant vomiting, fused cervical spine, and head stiffness.  AR 357.

13      **1. Exertion Questionnaire.**

14      In an Exertion Questionnaire dated November 11, 2015, Plaintiff wrote that
15 she tries to walk "a little bit" but always has to sit down because she gets "so dizzy
16 and light-headed" that she fears blacking out.  AR 383.  She could walk around the
17 grocery store to select items, but her husband or teenage daughter needed to lift
18 them.  AR 384.  She identified dizziness as a symptom of her gastroparesis.  <u>Id.</u>
19 She reported throwing up 2-4 times per day.  AR 385-86 (reporting nausea and
20 vomiting "all day long").  She was taking 9 medications to address gastrointestinal
21 issues.  AR 387-88.

22      She could not lift more than five pounds and could not effectively use her
23 left hand because "3 out of 5 fingers" on that hand were "completely numb."  AR
24 384.  She attributed weakness in her left hand to carpal tunnel syndrome.  AR 389.
25 She also could not lift her left arm "up all the way."  AR 385; AR 389 (could not
26 lift it "more than eye level").  She explained that her pain was "there 24 hrs a day"
27 because she is allergic to "morphine, Norco, Vicodin, gabapentin, naproxen, and
28 soma."  AR 386.  She was taking Tylenol, Ultram, Tramadol, and ibuprofen for

pain. AR 388.

She was still able to drive and drove daily to pick up her daughter from school. AR 384. Nevertheless, she reported that she could not turn her head "to the left or up and down all the way." AR 385. She had a neck brace and reported that if she did not wear it, then she could not "move [her] head at all." Id.

She no longer did household chores other than folding laundry. She could not lift the laundry, "bend over" to clean the bathroom, or push a vacuum. AR 385.

### 2. Hearing Testimony.

At the hearing in July 2018, Plaintiff testified that she had pain in her left shoulder and mid-back. AR 186. Her left shoulder pain ran down to her left hand. Id. Her pain was constant and was typically at a level six or seven out of ten. AR 187. She was taking ibuprofen during the day and Tylenol with codeine at night. Id. Even with pain medication, her pain level was never below six. AR 188.

She testified that she had just finished a course of physical therapy for her left shoulder and had been referred to a surgeon. AR 188.

Regarding her stomach, she testified that she was nauseated constantly and threw up 4-6 times per day. AR 189. She attributed this to a surgeon cutting a "stomach nerve" during surgery in 2008. Id. She explained that she was still able to work after 2008 because her condition got "worse and worse" over time until 2012 or 2013 when she was throwing up daily. AR 189-90.

She testified that she drops things "all the time" because her fingers tingle to the point where she cannot even perceive if she is holding something. AR 193. She testified that the tingling was constant. Id. She also walks into walls because her "balance is off." Id.

On a typical day, she testified that she lays down with a cold rag on her head watching her cats; she cannot focus enough to watch TV. AR 190-91. Her daughter does the household cooking. AR 191. She did "side jobs" cleaning

houses "and stuff" from 2012-2014. AR 183-84.

### C. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony.

The ALJ began his consideration of Plaintiff's subjective symptoms testimony by reciting the two-step process required by law. AR 38. The ALJ then provided a short summary of Plaintiff's testimony:

> Plaintiff has pain in her left shoulder, stomach, and mid-back. She has constant nausea. She vomits four to six times a day. She has problems with her right hand. She has tingling in her bilateral hands. She spends all day lying in bed. Her thirteen-year-old daughter does household chores.

AR 39.

The ALJ determined that Plaintiff satisfied the first step, i.e., her medically determinable impairments could reasonably be expected to cause the alleged symptoms of pain, vomiting, and hand-tingling. Id. At step two, however, the ALJ found that Plaintiff's statements about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id.

Rather than immediately providing reasons, the ALJ next summarized Plaintiff's treating records, the medical opinion evidence, and statements from non-medical sources. AR 38-41. The ALJ concluded by repeating his initial assertion of inconsistency: "While there are exertional limitations, the intensity and persistence of symptoms as alleged by the claimant are not consistent with the medical record signs and laboratory findings, or the medical record as a whole." AR 41.

### D. The ALJ Did Not Give Sufficient Clear and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Testimony.

"Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by

the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1225 (9th Cir. 2009). The Court therefore must examine the reasons given by the ALJ for discounting Plaintiff's testimony.

Reason One: The parties agree that one reason the ALJ gave for discounting Plaintiff's subjective symptom testimony is that it was not supported by objective medical evidence. (JS at 9, 12.) Throughout the summary of Plaintiff's treating records, the ALJ contrasted her subjective complaints with the results of imaging studies, other tests, and physical examinations. AR 39-40. The parties also agree, however, that the ALJ cannot cite the lack of objective support as the sole reason for discounting subjective symptom testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider.")

Proposed Reason Two: Defendant suggests that the ALJ also gave as a reason that Plaintiff's course of treatment was more infrequent or conservative than one would expect given Plaintiff's subjective symptom testimony. (JS at 15.) The ALJ, however, never characterized Plaintiff's treatment as conservative or aggressive.

In commenting on the lack of frequent or consistent treatment, the ALJ did say, "During the relevant period, the claimant had very few office visits or hospitalizations for recurrent vomiting." AR 39. Defendant argues that this contrast drawn between Plaintiff's claims and her course of treatment was intended to be a reason to discount Plaintiff's testimony. (JS at 15 ["If Plaintiff's gastroparesis was as severe as Plaintiff alleged, then it was reasonable to conclude that she would have sought treatment for the condition on a more frequent basis."].)

The ALJ, however, found that Plaintiff suffers from the severe impairment of gastroparesis and credited both her testimony and her husband's testimony that

11

1    Plaintiff vomits frequently.  AR 37, 39.  Based on this testimony, the ALJ included
2    additional bathroom breaks in the RFC.  AR 39.  The ALJ, therefore, was not
3    citing the infrequency of Plaintiff's doctor visits and/or hospitalizations for
4    recurrent vomiting as a reason to disbelieve her testimony that she vomits
5    frequently.  If the ALJ intended to cite the infrequency of Plaintiff's treatment as a
6    reason to disbelieve her testimony that the vomiting causes her to become dizzy or
7    requires her to lay on the bathroom floor for up to 25 minutes to recover, then the
8    ALJ did not explain his reasoning.

9         Proposed Reason Three:  Defendant suggests that since the ALJ also relied
10   on medical opinion evidence that was inconsistent with Plaintiff's testimony, the
11   ALJ did not rely solely on the lack of supporting medical evidence to discount that
12   testimony.  (JS at 15-16.)

13        The ALJ gave "great weight" to the opinion of state agency consultant Dr.
14   Ligon, the doctor who assessed the most restrictive RFC by finding that Plaintiff
15   could do light work with some postural limitations.  AR 41 (contrasting Dr.
16   Ligon's opinions with those of consultative examiner Dr. Joseph who opined that
17   Plaintiff could do medium work).  ALJs, however, are required to discuss each
18   medical opinion and state what weight they gave it.  See 20 C.F.R. § 416.927(c).
19   If doing so constituted a clear and convincing reason for discounting claimants'
20   subjective symptom testimony, then the rule articulated in Berry, Ghanim, and
21   other case law would be rendered meaningless.

22        Proposed Reason Four:  Plaintiff suggests that the ALJ found Plaintiff's
23   testimony inconsistent with the medical opinion evidence but failed to identify
24   which statements were inconsistent with which medical records.  (JS at 8.)

25        If a claimant gives testimony that is inconsistent with subjective complaints
26   reported in the medical evidence, that can provide a clear and convincing reason
27   for discounting the claimant's testimony.  For example, if a claimant testifies at the
28   hearing that he cannot walk to the end of his driveway, but his medical records

consistently reflect a steady or normal gait, then the ALJ could cite that inconsistency as a reason separate and distinct from the lack of objective support. See Ghanim, 763 F.3d at 1163; SSR 16-3p, 2017 WL 5180304 at *8.

Here, however, the ALJ cites to no specific inconsistencies between Plaintiff's testimony and specific medical records. The ALJ did not discuss Plaintiff's statements about dizziness and difficulty walking. Concerning Plaintiff's musculoskeletal complaint, the ALJ wrote, "the record does not support the severity of her allegations." AR 40. The ALJ, however, did not explain this conclusion or identify inconsistencies, other than pointing out the lack of supporting objective evidence and summarizing the results of the consultative examination. Id. As articulated by the ALJ, this is not an additional "clear and convincing" reason.

### E. **Credit as True Rule.**

Plaintiff argues that the Court must apply the "credit-as-true" rule, credit Plaintiff's subjective symptom testimony, and remand for a finding of disability. (JS at 10-11.) Defendant counters that if the Court finds error, then remand for reconsideration is appropriate, because if there are lingering doubts about Plaintiff's disability, she is not entitled to benefits merely because the ALJ erred. (Id. at 16-18.)

The Court has doubts about Plaintiff's disability. Plaintiff worked as a ski instructor until sometime between 2012 and 2014. See AR 183, 190 (testifying that she stopped working as a ski instructor in 2012 or 2013 because she was "hemorrhaging and throwing up"); compare AR 369 (writing that she worked at the ski resort until December 2014). She appears to have claimed a disability onset date of December 15, 2012 (AR 353), but she was able to work part-time cleaning houses between 2012 and 2014 (AR 183) and she provided no medical records from these years.

She had cervical fusion surgery in 2014 (AR 468) and wrote in November

2015 that she used her bone stimulator neck brace "everyday for 4-6 hours." AR 385. She wore that brace to her consultative examination (AR 467), but not a single other ER or medical appointment record comments that Plaintiff is wearing a neck brace.

There are no medical records in which Plaintiff complains of dizziness, let alone dizziness so serious it impairs her ability to walk. None of the medical records note that Plaintiff had any difficulty walking.[3] In August 2018, just a month before the ALJ's decision, Plaintiff stated that she spent thirty minutes every day doing physical activities like walking, gardening, and swimming. AR 65.

While Plaintiff complained of left-hand tingling and numbness before her surgical fusion surgery in 2014 (AR 477), after that procedure, she reported that those symptoms had resolved (AR 486). In her 2015 function questionnaire, she reported that several fingers on her left hand were "completely numb." AR 384. At the hearing in 2018, she testified that her fingers "are constantly tingling." AR 193. Yet in her medical records after 2014, she consistently denied tingling and numbness. See, e.g., AR 526, 624.

When Plaintiff sought medical attention for vomiting, it was generally because she had a UTI (AR 518, 634, 533, 548) or allergic reaction (AR 695). Plaintiff's husband testified that Plaintiff was eating less because she vomited so frequently to the point where "she can't eat hardly anything anymore." AR 197. In July 2018, however, Plaintiff reported that she was not concerned about her weight. AR 65. In October 2017, her weight was about 132 pounds. AR 542 (converting from kg). In May 2018, it was 132 pounds. AR 69. In March 2019, it was 132 pounds. AR 52. At times it fluctuated higher, but not significantly lower. AR 61, 70, 90, 96, 466, 600, 646.

Regarding her left shoulder, Plaintiff first reported pain in December 2012

---

[3] To the contrary, she was able to stomp her feet. See AR 74.

14

and was diagnosed with a muscle spasm. AR 455. She denied shoulder tenderness in December 2015 after falling on ice and fracturing her right pinky finger. AR 527. The next month, however, she attributed left shoulder pain to her fall; imaging revealed a normal shoulder. AR 501-04. Plaintiff slipped on dog urine in April 2017 but fell on her <u>right</u> side. AR 684. She slipped and fell again a few months later, this time on a hanger, but alleged only right hand pain. AR 624. In June 2018, Plaintiff reported yet another fall, at which point imaging revealed a left rotator cuff tear. AR 739. Later that year, she denied any prior shoulder injury other than that which resulted from her June 2018 fall. AR 99.

Given this record, remand for further administrative proceedings is appropriate. See <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that credit-as-true rule should not be applied where an "evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered REVERSING the decision of the Commissioner and REMANDING this case for further administrative proceedings consistent with this decision.

DATED: May 20, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge